```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MINNESOTA
                    Civil No. 13-500(DSD/FLN)
```

Network F.O.B., Inc.,

       Plaintiff,

v.                                                            **ORDER**

Great American Insurance
Company of New York,

       Defendant.

    Adam P. Rutzick, Esq., Rutzick Law Offices, P.A., 101 Fifth Street East, Suite 2620, St. Paul, MN 55101, counsel for plaintiff.

    Daniel N. Moak, Esq., Briggs & Morgan, P.A., 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402 and Nicholas T. Moraites, Esq., Eckert, Seamans, Cherin & Mellott, LLC., 1717 Pennsylvania Avenue N.W., Suite 1200, Washington, D.C. 20006, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant Great American Insurance Company of New York (Great American). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This insurance-coverage dispute arises out of the theft of funds by non-party Laura Schwartz from her employer, plaintiff Network F.O.B., Inc. (Network). Schwartz worked for Network as a

billing and bookkeeping clerk and, at all times relevant to the instant dispute, was classified as an independent contractor for tax purposes. See Moraites Aff. Ex. C.

Schwartz's employment was initially governed by an Independent Contractor Agreement (2006 Agreement), which was signed by Network and Schwartz in her individual capacity. See Rutzick Decl. Ex. C, at 1.  In 2009, Schwartz established an LLC, LM ENT Services (LM ENT), which executed a new Independent Contractor Agreement (2009 Agreement) with Network. See Moraites Aff. Ex. B, at 1.  In 2010 and 2011, Schwartz engaged in numerous fraudulent transactions and stole approximately $183,000 from Network.  See Rutzick Decl. Ex. E, at 5.  In December 2012, Schwartz was convicted of six counts of theft by swindle.  Id.

Great American provided insurance coverage to Network for business, property and commercial operations pursuant to an insurance contract (Policy).[1]  See Moraites Aff. Ex. A.  The Policy provided coverage for "loss of or damage to money, securities and other property resulting directly from theft committed by an

---

[1] Great American insured Network under two policies, one covering January 2, 2010, to January 2, 2011, and the second covering January 2, 2011, to January 2, 2012.  Because both policies are identical with respect to the language at issue in the instant motion, the court refers to a single Policy.
   Further, although Schwartz's theft began prior to 2010, the parties agree that the Policy was a "loss sustained" agreement, which "only covered losses that occurred during the corresponding policy periods." Mem. Supp. 1 n.1.  In other words, Network only seeks to recover under the Policy for losses incurred during the period of January 2, 2010, to January 2, 2012.

employee." See id. (internal quotation marks omitted). Network tendered a claim to Great American for its losses resulting from the theft by Schwartz. Compl. at 4. Great American informed Network that the claim was not covered by the Policy because Schwartz was not an "employee" of Network within the meaning of the Policy. Id. at 5.

On February 7, 2013, Network filed suit in Minnesota court, alleging breach of contract. Great American timely removed, and moves for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon

3

mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II.  Insurance Coverage

"State law governs the interpretation of insurance policies." Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003) (citation omitted). Here, the parties agree that Minnesota law governs this action. In Minnesota, the interpretation of an insurance policy is a question of law. Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001). The court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). The court gives unambiguous language its plain and ordinary meaning, and construes ambiguous language against the drafter and in favor of the insured. Id. at 880; Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn.

2000). Language is ambiguous if "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979) (citation omitted). However, the court "guard[s] against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006) (citation and internal quotation marks omitted).

Under Minnesota law, the insured has the initial burden of establishing a prima facie case of coverage. See SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910 (Minn. 2009). "What constitutes a prima facie showing of coverage depends on the language of the particular policy." Id. Great American argues that summary judgment is warranted because Network cannot establish a prima facie case of coverage. Specifically, Great American argues that Schwartz was not an employee within the meaning of the Policy because coverage expressly extended only to employees who were natural persons and did not cover Schwartz after she formed the LLC.[2] Here, the Policy provides in relevant part:

---

[2] Further, Great American argues that Network cannot establish a prima facie case of coverage because (1) Schwartz was not an employee within the meaning of the Policy because she was not paid directly by Network and (2) the doctrine of quasi-estoppel bars Network from arguing that Schwartz was an employee, rather than an independent contractor. Because the court finds that summary judgment is warranted, it need not reach such arguments.

5

> [F](5)(a). "Employee" means: (1) any natural person: (a) while in your service and for the first 30 days immediately after termination of service ...; (b) who you compensate directly by salary, wages or commissions; and (c) who you have the right to direct and control while performing services for you ...
>
> (b) "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in paragraph 5.a.

Moraites Aff. Ex. A, at F(5)(a)-(b).

Network argues that because Schwartz, a natural person, committed and was convicted of the underlying theft, the court need not consider the fact that her employment relationship with Network flowed through a corporate entity. Such an argument is unavailing. Here, it is undisputed that Schwartz established LM ENT as an LLC. See Rutzick Decl. Ex. H. Thereafter, Network and LM ENT executed the 2009 Agreement, which detailed their relationship and identified LM ENT as an independent contractor. See Moraites Aff. Ex. B. Thus, the proper analysis is whether LM ENT - not Schwartz - was an employee of Network as defined by the Policy.

In Minnesota, there is a "presumption that the parties intended the language used to have effect." Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 526 (Minn. 1990) (citation omitted). Each word in the Policy should be interpreted to have a meaning, rather than to be redundant or superfluous. See Econ. Premier Assurance Co. v. W. Nat'l Mut. Ins. Co., 839 N.W.2d 749, 756 (Minn.

6

Ct. App. 2013). Courts must "attempt to avoid an interpretation of the contract that would render a provision meaningless." Chergosky, 463 N.W.2d at 526 (citation omitted). Here, the Policy provides coverage only for the activities of those workers who are natural persons. If all potential "employees" were natural persons, however, such a provision would be superfluous. See Jones v. Sun Carriers, Inc., 856 F.2d 1091, 1095 (8th Cir. 1988). Thus, the provision contemplates and rejects a definition of "employee" that includes non-natural entities, such as an LLC. As a result, LM ENT - as an LLC rather than a natural person - was not an employee within the scope of the Policy at issue in this case. Therefore, Network cannot establish a prima facie case of coverage, and summary judgment is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 37] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 7, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court